## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ROBERT A. DOANE on behalf of himself and others similarly situated,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **MEGA ENERGY OF NEW ENGLAND, LLC,** <br><br> **Defendant.** | **C.A. No.** |

## CLASS ACTION COMPLAINT
## AND JURY DEMAND

## <u>PRELIMINARY STATEMENT</u>

1.      Plaintiff Robert A. Doane ("Plaintiff" or "Doane") brings this action on his own behalf and on behalf of a class of similarly situated Massachusetts consumers against defendant Mega Energy of New England, LLC ("Mega Energy" or "Defendant") for its violations of the Massachusetts Telephone Solicitation Act, M.G.L., c. 159C, (the "MTSA"), the Telephone Consumer Protection Act, 47 U.S.C., § 227 *et seq*. (the "TCPA")"), the Massachusetts Wiretap Act, M.G.L., c. 272, § 99 (the "MWA"), and the Massachusetts Consumer Protection Act, M.G.L., c. 93A ("Chapter 93A").

2.      Plaintiff makes the following allegations on information and belief (based on, among other things, the investigation of his counsel), except those allegations relating to Plaintiff and his own experiences with the calls that are the subject matter of this Complaint, which are based on personal knowledge.

3.     Plaintiff brings this claim against Defendant pursuant to the MTSA and its underlying regulations for making or causing to be made unsolicited telemarketing sales calls to Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers, without their express consent or permission.  Defendant's conduct in making these calls violated various provisions of the MTSA, as set forth herein.

4.     Plaintiff brings this claim against Defendant pursuant to the TCPA and its underlying regulations for making or causing to be made calls to Plaintiff's cellular telephone and to the cellular telephones of at least hundreds of Massachusetts consumers without Plaintiff's or Class members' prior express written consent, in violation of various provisions of the TCPA, as set forth in detail herein.

5.     Plaintiff brings this claim against Defendant pursuant to the MWA for secretly and unlawfully recording the calls to Plaintiff and Class members without their knowledge and consent, and by using those recordings.

6.     Plaintiff brings this claim against Defendant pursuant to Chapter 93A because Defendant's conduct, including its conduct in violation of the TCPA, the MTSA and the MWA constitutes unfair and deceptive acts and practices in violation of c. 93A, § 2

7.     Plaintiff seeks damages (including compensatory damages, statutory damages, and multiple damages) for the offending calls and injunctive relief on behalf of himself and the Class.

8.     Defendant and the telemarketers and call centers with which it contracted to market Mega Energy's services, including Infinite Ville Solutions, based in Lahore, Pakistan (the "Telemarketers"), made at least hundreds of repetitive and abusive telemarketing calls to Massachusetts consumers' cellular telephones, including Plaintiff's and Class members' cellular telephones.

2

9.      Defendant is liable for the calls made to Plaintiff and Class members on its behalf, whether the calls were placed directly by Defendant or by the Telemarketers.

10.      Neither Plaintiff nor any of the other Class members provided prior express permission or consent or prior express written consent to receive calls from Defendant or the Telemarketers, which were placed solely for telemarketing solicitation purposes.

11.      A class action is the only practical means of obtaining redress for Defendant's massive illegal telemarketing scheme, and it is consistent both with the private right of action afforded by the MTSA, the TCPA, and Chapter 93A and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## THE PARTIES

12.      Plaintiff Robert A. Doane is an individual and a citizen of Massachusetts.

13.      Defendant Mega Energy is and was at all times relevant a limited liability company organized under the laws of Texas, with a principal office located at 2150 Town Square Place, Suite 711, Sugar Land, Texas 77479. Mega Energy has been registered to do business in Massachusetts since 2012; its registered agent in Massachusetts is Capitol Corporate Services, Inc., 44 School Street, Suite 505, Boston, MA 02108.

## JURISDICTION AND VENUE

14.       This Court has subject matter jurisdiction pursuant to 28 U.S. C. § 1331 as this action involves violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC.*, 132 S. Ct. 740 (2012). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

15.      This Court has personal jurisdiction over Defendant pursuant to M.G.L., c. 223A,

§ 3(a), because Defendant: is registered to do business in Massachusetts and maintains an agent for service of process in Massachusetts; regularly transacts and has transacted business in Massachusetts by, among other things, making telemarketing sales calls to Massachusetts residents, including Plaintiff and Class members; solicits business in Massachusetts; and contracts to provide goods and services in Massachusetts.  The acts or conduct that are the subject matter of this action arose from Defendant's transaction of business in Massachusetts.  In addition, Defendant is "[d]oing business in Massachusetts," as defined in 201 C.M.R., § 12.01, by "[c]onducting telephonic sales calls" "to consumers in Massachusetts."  In addition, this Court has personal jurisdiction over Defendant pursuant to the MTSA, M.G.L. c. 159C § 12, which states; "A court of the commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by this chapter."

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and the wrongful conduct giving rise to this case occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### *The TCPA and Defendant' Violations*

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.     The National Do Not Call Registry ("National Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the National Registry

4

"must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

19.     Owners of wireless telephone numbers receive the same protections from listing on the National Registry as owners or subscribers of wireline phone numbers. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" The Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

20.     The TCPA and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the National Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

21.     The TCPA also requires telemarketers to maintain an internal do-not-call list. 47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

22.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a

private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 27(b)(3).

23.    According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

24.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

25.    Since 2003, the FCC has required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, the FCC ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be
>
> sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[]  In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd 1830, 1844 (2012) (footnotes omitted).

26.    In addition, prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the

signatory authorizes such advertisements or telemarking messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

27.     Defendant made calls to Plaintiff's and Class members' cellular phones using an automatic telephone dialing system ("ATDS") and prerecorded messages without the prior express written consent of Plaintiff or the Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

28.     Defendant failed to maintain and failed to ensure that its Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1).

29.     Defendant and Defendant's Telemarketers failed to provide Plaintiff and Class members, upon demand, Mega Energy's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1).

30.     Defendant failed to ensure that their personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2).

31.     Defendant and Defendant's Telemarketers failed to provide to Plaintiff and Class members the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4).

32.     Defendant and their Telemarketers engaged in and caused a pattern or practice of initiating telephone solicitations to Plaintiff's and Class members' cellular phones without Plaintiff's and Class members' express written consent in violation of 47 U.S.C. § 64.1200(c)(2).

### The MTSA and Defendant' Violations

33.     The MTSA and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls

made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations, and restrictions are prohibited.

34.    It is a basic threshold requirement that telephone solicitors engaging in unsolicited telephonic sales calls to Massachusetts consumers "properly register on an annual basis with the Office."[1] 201 C.M.R. § 12.04.  Neither Defendant nor any of the Telemarketers are registered with the Office, as required by 201 C.M.R. § 12.04. Proper registration requires various steps, including submission of a written application containing, among other things, the telephone solicitor's name, address, telephone number and name of agent and address for service of process, and payment of an annual registration fee.  *Id.*  By failing to comply with these requirements, Defendant failed to satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration prior to soliciting any Massachusetts consumers."  201 C.M.R. § 12.04(3).  By virtue of this noncompliance, Defendant is in violation of the MTSA.

35.    Defendant and the Telemarketers failed in their obligation to keep and consult the Massachusetts do not call registry prior to calling Plaintiff and other Class members, in violation of 201 C.M.R., §§ 12.02(6) and 12.04(3) (requiring telemarketers to keep the most recent version of the do not call registry and check or consult it prior to making any unsolicited telephonic sales calls). *Id.*  Defendant and the Telemarketers also failed to comply with the related requirement that they "institute procedures for honoring the list of Massachusetts consumers who have [registered with the Massachusetts do not call registry]."  201 C.M.R., §12.02(6).  Indeed, Defendant and the Telemarketers, because they were not properly registered as telemarketers in Massachusetts, could not have complied with the foregoing requirements because only "properly

---

[1] The "Office" refers to the Massachusetts Office of Consumer Affairs and Business Regulation (the "Office").

registered telephone solicitors" are eligible to "receive the [Massachusetts] do not call registry."

201 C.M.R. §§ 12.04(2) and (4).

36.     Defendant and the Telemarketers violated M.G.L. c. 159C, § 3 (and 201 C.M.R. § 12.02(1)) by calling Plaintiff and other Class members who were registered with the Massachusetts do-not-call registry, and they violated c. 159C, § 1 by calling Plaintiff and Class members after they expressed their desire not to receive further calls.

37.     In addition, Defendant and the Telemarketers made calls without providing proper disclosures about the telemarketing company and Mega Energy, in violation of c. 159C, § 5A (and 201 C.M.R. § 12.02(7)) and made calls using falsified and displaced caller identification, in violation of c. 159C, § 4 (and 201 C.M.R. § 12.02(5)).

### Defendant's Telemarketing Operations and its Relationship With the Telemarketers

38.     Defendant relies heavily if not exclusively on unlawful telemarketing campaigns to generate customers.

39.     In implementing its telemarketing campaigns, Defendant utilizes the Telemarketers that operate as Defendant's agents in conducting these campaigns.

40.     Defendant's tactics are geared to evade liability for what it knows to be illegal telemarketing, and through its tactics, Defendant reaps increased sales volume at a low cost, unfairly competing against those companies offering the same or similar services that attempt to generate business lawfully.

41.     Defendant's tactics are also abusive, harassing, and constitute an invasion of privacy and intrusion upon the seclusion of thousands of Massachusetts consumers, and if left unrestrained, pose a clear and present threat to the privacy and solitude of thousands of Massachusetts consumers in the future, with the potential of harming other companies who generate business lawfully.

42.     There are many complaints about Mega Energy and its telemarketing and other business practices online, including the following:

- "Mega Energy practices telemarketing that goes against TCPA and DNC. I receive four calls on my cell phone today that has been listed on the DNC since 2006. During one call I was verbally harassed and cursed at. They misrepresent themselves as **** and try to lie to trick me into switching electric providers. I recorded the 4th call in an effort to back up my complaint with them." Date: 2/14/20[2]

- "I will never choose this company even if they offer 1c a KWh because of the fact that they have hired unscrupulous telemarketers that call at least twice a day using spoofed caller id to make if appear that they are calling from a local number.  I have asked them several times to remove my number from their calling list but to no avail.

- My response to this daily harassment is to blacklist Mega Energy even if they are a genuine company.  Do everyone a favor and please don't buy energy from this company"
  Date:  December 26, 2019

- "I've gotten two calls from this company, after speaking to the representative and telling him I need to speak first with my husband and ask around, he kept on insisting I just "verbally agree", I continue to state I was NOT going to agree to anything, he repeated over and over how they could save me SO much money, I repeated myself that I needed to review the company & ask around since I never heard of them.  Towards the end of the call, I repeated myself once more I was NOT going to verbally agree to anything, his politeness came out and told me to "GTH" and hung up, if that isn't top notch customer service not sure what is.  I'm really hoping he placed my number on the do not call list LOL."  Date:  2/16/21[3]

***Mega Energy's Agency Relationship With its Telemarketers***

43.     At all times relevant, Mega Energy utilized the services of the Telemarketers to advertise, promote and sell Mega Energy's services.  The Telemarketers operated as agents of Mega Energy in this process.

44.     The Telemarketers were not, at any relevant time, registered with the Office—a fact that Mega Energy either knew or should have known.

---

[2] Source:  Mega Energy | Reviews | Better Business Bureau Profile (bbb.org)
[3] Reviews for Mega Energy (ilenergyratings.com).

45.     At all times relevant, Mega Energy authorized the Telemarketers to solicit business on its behalf through use of telemarketing.

46.     At all times relevant, Mega Energy had control over the Telemarketers' actions on its behalf.  For example:

       a.     Mega Energy limited the type of consumers that the Telemarketers could solicit for Mega Energy;

       b.     Mega Energy specified the geographical areas within which the Telemarketers could solicit business for Mega Energy;

       c.     Mega Energy decided whether, and under what circumstances, it would accept a solicited customer from the Telemarketers;

       d.     Mega Energy instructed the Telemarketers with respect to the volume of calling and the leads it would purchase from them; and

       e.     Mega Energy had day-to-day control over the actions of the Telemarketers with respect to the conduct of the various telemarketing campaigns in which they were engaged, including the ability to prohibit the Telemarketers from using an automatic telephone dialing system, prerecorded messages, illegal spoofing and other illegal methods to contact potential customers of Mega Energy.

47.     At all times relevant, the Telemarketers were compensated by Mega Energy for each customer that they generated on behalf of Mega Energy.

48.     At all times relevant, the Telemarketers, with the knowledge and the assent of Mega Energy and as part of Mega Energy's telemarketing campaign, contacted Massachusetts consumers on their cellular telephones using caller ID "spoofing," automatic telephone dialing systems, and prerecorded messages without their prior express consent or permission and while these consumers were listed on the Massachusetts do-not-call registry.

49.     At all times relevant, when the Telemarketers would generate a customer for Mega Energy, the customer would be transferred to Mega Energy.

50.     At all times relevant, the Telemarketers had the actual authority of Mega Energy to make the illegal calls to Plaintiff and Class members complained of herein.

51.     The calls placed to Plaintiff and Class members were within the scope of the Telemarketers' actual or, in the alternative, apparent authority of Mega Energy.

52.     At all times relevant, Mega Energy directly and illegally profited from the aforementioned efforts of the Telemarketers and ratified the actions of the Telemarketers by knowingly accepting the benefits of their illegal activities.

53.     Mega Energy is vicariously liable for the acts and omissions of its Telemarketers in violation of the TCPA and the MTSA.

54.     The FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 92-90, Memorandum and Order, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

55.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013) ("May 2013 FCC Ruling").

56.     Mega Energy was legally responsible for ensuring that the Telemarketers complied with the TCPA and the MTSA even when Mega Energy did not make the solicitation calls directly.

### *Defendant's Calls to Plaintiff and Class Members*

57.     Plaintiff is an individual who suffers from a sleep disorder and often sleeps during the day. Plaintiff is the trustee of several trusts, and at all times relevant, he was the primary caretaker and power of attorney for his two elderly parents, and stepmother suffering from dementia.

58.     At all times relevant, Plaintiff's cell phone number, 781-245-6577, which is the same number he has had since a child, and is now the number assigned to his cellphone, has been used for residential purposes and has at all times relevant been listed on the National Registry.

59.     Numbers listed on the National Registry are automatically included in the Massachusetts do-not-call list.

60.     Leading up to December 5, 2018, Defendant, through its agents, without Plaintiff's prior express consent, caused several telephone calls to be made to Plaintiff's cellphone, listed on the National Registry and the Massachusetts do-not-call registry, using spoofing, ATDS, and prerecorded messages, offering discounts on energy and attempting convince Plaintiff to switch electricity providers to Mega Energy.

61.     Despite Plaintiff's attempts to get the calls to stop, including specific verbal requests that the calls stop, the calls continued, and in response to Plaintiff's requests to the live agents for their do-not-call policy, the agents responded by hanging up and later calling again.

62.     Plaintiff, infuriated at the harassing calls, and desiring to stop them and hold those responsible for the calls accountable, and concluding that the only way to identify those responsible would be to express interest in what the agents were attempting to sell, Plaintiff decided to feign interest in the services being marketed for the sole purpose of identifying those responsible for the calls.

63.     On December 5, 2018, at 9:33 a.m., Plaintiff received a call with the same fact pattern as the previous call from a number appearing on the caller identification as 781-939-1244, and upon answering, the same prerecorded message was played. After being prompted to press one, one was pressed, a "boop" was heard, and a male agent got on the line. The following occurred:

    a.     The agent stated his name was "Danny" and stated the call was in regard to providing a discount on Plaintiff's electric bill for the next twelve months.

    b.     The agent asked Plaintiff whether he was getting any assistance from the government to pay the electric bill. After indicating that no assistance was being received, the agent asked Plaintiff if his zip code was 01880.

c.  Plaintiff advised the agent his zip code was 02568. Plaintiff indicated that the agent apparently had his off-season mailing address, that there were several addresses, and that his actual residence was elsewhere.

d.  The agent stated extra charges were being paid on the electric bill such as monthly fees, that they were providing a discount, 13.9 cents, and the agent then asked for Plaintiff's electric bill.

e.  Plaintiff, in an attempt to obtain legitimate contact information, indicated that the electric bill was not readily available, and asked the agent whether they could be contacted at the number appearing on his caller identification.

f.  The agent, after making several inexplicable statements, suggested they would call back.

g.  Plaintiff indicated to the agent that he would call back. The agent continued to insist on calling Plaintiff back.

h.  At no time did the agent identity his company or on whose behalf he was calling.  After a short further discussion, the call was terminated.

64.  On December 5, 2018, at 4:07 p.m., Plaintiff received a call from a number appearing as 773-654-5628, from the same agent who again attempted to solicit sales of electricity and who, as later determined, was acting on behalf of Defendant. The agent again asked for Plaintiff's electric bill, and because Plaintiff was preoccupied, the call was terminated.

65.  On December 5, 2018, at 4:20 p.m., another call was received from 773-654-5628, from the same who again attempted to solicit sales of electricity, asking for Plaintiff's electric bill. Plaintiff, on this occasion, in another attempt to identity the offenders, provided the agent with information from his electric bill. It was not until several minutes into the call that the agent disclosed "Mega Energy" as the company to which the agent was seeking to have Plaintiff switch his electric service . The following occurred:

a.  Plaintiff asked the agent if he could be reached at the number appearing on the caller identification, and in response, the agent again provided Plaintiff with a runaround.

b.  The agent did provide Plaintiff with a contact number for Mega Energy (855-810-6342), and then advised Plaintiff he would be performing verification for the state of Massachusetts, and he instructed Plaintiff as to what to say during the various prompts before actually transferring for verification (including that Plaintiff's mailing address

of 103 Prospect Street in Wakefield should be provided).

c.    The agent also instructed Plaintiff not to push any keys, that the agent would be doing so.

d.    The agent transferred the call, and piano music was heard for a while before he returned with the verification system on the line.

e.    A prerecorded female voice was heard asking to state the name on the bill, and that name was provided, and as the questions continued, the agent could be heard pressing keys in response to the prompts.

f.    To ensure the proper parties were identified, Plaintiff permitted the verification to continue, and again, the verification confirmed that Mega Energy was the beneficiary of the unsolicited calls.

g.    The prerecorded prompts did indicate that there would be a cancellation fee, but also that there would be no fee if the service is canceled within three days.

h.    Plaintiff did not answer several of the prompts, although it is not clear whether the agent responded to the prompts on Plaintiff's behalf.

i.    EverSource account number 15291640017 (for 21 New Lane, West Tisbury, Plaintiff's residence) was provided.

j.    The automated message indicated terms and conditions would be mailed and that the number 855-810-6342 may be called to cancel before three days to avoid the cancelation fee.

k.    After the verification, the verification # 00504066 was given, and the call terminated. Plaintiff did not answer several of the prompts, and upon information and belief, the verification could not have been completed.

l.    Plaintiff later confirmed that the number the agent provided was in fact a Mega Energy number.  However, when called, no person could be reached, and the mailbox to leave a message was full.

66.    Later that same day, December 5, 2018, at 4:31 p.m., Plaintiff received a call from 773-654-5628, again from the same agent, attempting to solicit sales of electricity and asking for his electric bill at other locations. The agent was told that the call was breaking up, and the call was terminated.

67.    The next day, December 6, 2018, at 11:32 a.m., Plaintiff received a call from the same number, 773-654-5628, with no one on the line. A few seconds later, another call was received from the same number and was unanswered.

68.     Again, on December 6, 2018, at 11:55 a.m., while in a meeting, Plaintiff received two more calls from 773-654-5628, one with no one on the line, and one immediately thereafter from the same agent who made the previous calls. On this occasion, the agent stated he was a manager at Mega Energy. Plaintiff advised the agent he was in a meeting, and the call was terminated.

69.     Again, on December 6, 2018, at 1:03 p.m., Plaintiff received two more calls from 773-654-5628, the first of which had no one on the line, and on the second call, the same agent as on previous calls stated they were in final stage of verification, and they wanted to switch all his electricity accounts. Plaintiff asked the agent if they could be reached at the number from which they called, and that number was read over the phone. The agent replied, stating they could not be reached because they were using the Internet to make the calls, but that they were the "sales department" for Mega Energy. Plaintiff advised the agent he was busy, and the call was terminated.

70.     As is the case with the calls made to Plaintiff, the calls made to other Class members were made: a) by persons not registered with the Office as telemarketers in Massachusetts; b) using falsified and displaced caller identification; c) without initially disclosing the identity of the telemarketing company or the ultimate seller; d) to persons listed with the National Registry and Massachusetts do-not-call registry; e) without the Class member's prior express consent or permission; f) using an ATDS and/or prerecorded messages; g) and without providing the telemarketer's and the ultimate seller's internal do not call policy.

71.     As is the case with the calls made to Plaintiff, the calls made to other Class members were recorded without the Class members' knowledge or consent, and Defendants made use of those recordings, in violation of the MWA.

### *Injuries Suffered*

72.     Plaintiff and the other Class members have been injured as a result of Defendant's violations of the MTSA and its underlying regulations in at least the following ways: harassment,

invasion of privacy, and interference resulting from the calls, as well as costs incurred due to wear and tear on their phones, cellular phone battery usage, and use of cellular calling time.

## **CLASS ACTION ALLEGATIONS**

73.     Plaintiff brings this action pursuant to Mass. R. Civ. P. 23 on behalf of a Class as follows:

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one unsolicited telephonic sales call within any twelve (12) month period at any time during the applicable limitations period (the "MTSA Class").

All Massachusetts residents to whom Defendant and/or third parties acting on its behalf, made more than one  unsolicited telephonic sales call within a twelve (12) month period at any time during the applicable limitations period, where the called number was listed on the Massachusetts do-not-call Registry (the "The Massachusetts Do Not Call Subclass" or "MDNC Subclass").

All Massachusetts residents who received telemarketing calls to their cellular telephones from Defendant and/or third parties acting on its behalf, without the call recipient's prior express written consent at any time during the applicable limitations period (the "TCPA" Class).

74.     Common questions of law and fact exist as to all Class members and such questions predominate over any questions solely affecting any individual member. Such questions common to the Class include but are not limited to:

a.      Whether Defendant and the Telemarketers properly registered as telephone solicitors with the Office;

b.      Whether Defendant kept and consulted the latest version of the Massachusetts do-not- call registry;

c.      Whether Defendant placed more than one unsolicited telephonic sales call to Plaintiff and Class members within a twelve-month period, without Plaintiff's and Class members' express consent or permission;

d.      Whether Defendant called Plaintiff and Class members after they were listed with the Massachusetts do-not-call registry and/or the National Registry;

e.      Whether Defendant called Plaintiff and Class members after they expressed their desire not to receive further calls;

f.      Whether Defendant made calls to Plaintiff and Class members using falsified and/or displaced caller identification;

g.      Whether Defendant made calls to Plaintiff and Class members without proper required disclosures about the telemarketing company and the ultimate seller;

h.      Whether Defendant violated the provisions of the MTSA and the underlying regulations;

i.      Whether Defendant made calls to Plaintiff's and Class members' cellular phones without their prior express written consent;

j.      Whether Defendant made calls to Plaintiff's and Class members' cellular phones using an ATDS or an artificial or prerecorded voice or message;

k.      Whether Defendant failed to ensure that Defendant and its telemarketers maintained an internal do-not-call list;

l.      Whether Defendant failed, on demand, to provide Plaintiff and Class members with Defendant's and the Telemarketers' do-not-call policy;

m.      Whether Defendant failed to provide to Plaintiff and Class members the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted;

n.      Whether the calls to Plaintiff and Class members were recorded without Plaintiff's and Class members' knowledge and consent;

o.      Whether Defendant and/or its agents made use of those recordings;

       p.       Whether Defendant engaged in unfair and deceptive practices in violation of M.G.L., c. 93A, § 2.

       q.       Whether Plaintiff and Class members are entitled to damages and the appropriate measure of damages.

75.     Plaintiff's claims are typical of the claims of the other members of the Classes and the MDNC Subclass. The factual and legal bases of Defendant's liability to Plaintiff and the other members of the Classes and the MDNC Subclass are the same: Defendant violated the MTSA and its underlying regulations by placing unsolicited telephonic sales calls to Plaintiff and Class members without their express consent or permission, and Defendant violated the TCPA by making unsolicited telemarketing calls to the cellular phones of Plaintiff and the other members of the TCPA Class without their prior express written consent.

76.     Plaintiff will fairly and adequately protect the interests of the Classes and the MDNC Subclass. Plaintiff has no interests that might conflict with the interests of the Classes or the MDNC Subclass.  Plaintiff will pursue his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regard to the claims alleged herein.

77.     Class action treatment is superior to other alternative methods for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are at least hundreds of members of the Classes and the MDNC Subclass, such that joinder of all members is impracticable.

78.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.

## CLAIMS FOR RELIEF

### COUNT I
**(Violation of the MTSA – on behalf of Plaintiff and the MTSA Class)**

79.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count I on behalf of himself and the MTSA Class.

80.     Defendant made unsolicited telephonic sales calls to Plaintiff and Class members. Defendant made these calls to Plaintiff and Class members: a) without Plaintiff's and Class members' express consent or permission, in violation of M.G.L., c. 159C, § 1; b) after Plaintiff and Class members expressed their desire not to receive further calls, in violation of c. 159C, § 1; c) by using falsified and displaced caller identification, in violation of M.G.L., c. 159C, § 4 and 201 C.M.R. § 12.02(5); and d) without proper disclosures about the telemarketer and the ultimate seller, in violation of c. 159C, § 5A and 201 C.M.R. § 12.02(7).

81.     Defendant and the Telemarketers also failed to register with the Office, in violation of 201 C.M.R., § 12.04.  Telephone solicitors making calls to Massachusetts consumers are required "to properly register on an annual basis with the Office." *Id*.  Proper registration requires various steps, including submission of a written application containing, among other things, the telephone solicitor's name, address, telephone number and name of agent and address for service of process; and payment of an annual registration fee. *Id*.  By failing to comply with these requirements, Defendant has failed to satisfy a basic, threshold requirement for conducting telephone solicitations in Massachusetts, *i.e.*, that telephone solicitors must "have an approved registration prior to soliciting any Massachusetts consumers."  201 C.M.R., § 12.04(3).

82.     Defendant has also failed to comply with the requirement of 201 C.M.R. § 12.04(3) that it keep and consult the latest version of the Massachusetts do-not-call registry.

83.     As a result of this conduct, Defendant has violated the MTSA, and it is liable to Plaintiff and Class members for damages, including actual monetary loss from such knowing

MTSA violations or up to $5,000 in damages for each such knowing violation, whichever is greater.

## COUNT II
### (Violation of the MTSA Do Not Call Provisions-on behalf of Plaintiff and the MDNC Subclass)

84.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count II on behalf of himself and the MDNC Subclass.

85.     Defendant made unsolicited telephonic sales calls to Plaintiff and MDNC Subclass members when Plaintiff and MDNC Subclass members were registered with the Massachusetts do-not-call registry, in violation of M.G.L., c. 159C, § 3 (and 201 C.M.R. § 12.02(1)).

86.     As a result of this conduct, Defendant has violated the MTSA, and it is liable to Plaintiff and MDNC Subclass members for damages, including actual monetary loss from such knowing MTSA violations or up to $5,000 in damages for each such knowing violation, whichever is greater.

## COUNT III
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A) on behalf and the TCPA Class)

87.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.  Plaintiff brings this Count III on behalf of himself and the TCPA Class.

88.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

89.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

90.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

91.     Mega Energy violated 47 U.S.C. §227(b)(1)(A)(iii) by placing telemarketing calls to Plaintiff's cellular phone (and Class members' cellular phones) using an ATDS, prerecorded messages and spoofed numbers without Plaintiff's prior express written consent.

92.     Plaintiff's allegation that the calls he received were made with an ATDS is based on, among other things, the use of prerecorded messages; the prompt to press one and the audible tone before being connected with an agent; the number and frequency of the calls; the fact that he was called without prior consent (indicating the likelihood that his number was not called from a pre-existing list); the fact that he was called using spoofed numbers; and the promotional nature of the calls.

93.     Pursuant to 47 U.S.C. § 227(b)(3)(B), Mega Energy is liable to Plaintiff and each Class member for a minimum of $500 per violation, which includes multiple violations for each call.

94.     Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

95.     Defendant's conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

96.     Plaintiff and Class members are entitled to have their damages trebled for the aforesaid willful and knowing violations of the TCPA.

## COUNT IV
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4) on behalf of Plaintiff and the TCPA Class)

97.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.  Plaintiff brings this Count IV on behalf of himself and the TCPA Class.

98.     A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

99.     47 C.F.R. § 64.1200(c) and (d) set forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

100.     Mega Energy did directly, and through the Telemarketers, violate 47 C.F.R. § 64.1200 *et seq.*  in at least the following respects:

 a.     By failing to ensure that Mega Energy and the Telemarketers maintained a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

 b.     By failing to provide Plaintiff and TCPA Class members, upon their demand, Mega Energy's and the Telemarketers' do-not-call policy, in violation of 47 C.F.R. § 64.1200(d)(1);

 c.     By failing to ensure that its personnel and the personnel of the Telemarketers were informed and trained in the existence and use of the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);

 d.     By failing to provide to Plaintiff and TCPA Class members the name of the individual caller, the name of the person or entity on whose behalf the call is being made,  and the telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4); and

e.      By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's and TCPA Class members' cellular phones without their express written consent in violation of 47 U.S.C. § 64.1200(c)(2).

101.    Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Mega Energy is liable to Plaintiff and each TCPA Class member for a minimum of $500 for each violation of the TCPA, which includes multiple violations for each call.

102.    Mega Energy's aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder was willful and knowing.

103.    Plaintiff and TCPA Class members are entitled to have their single damages trebled for these willful and knowing violations.

## COUNT V
**(Violations of the Massachusetts Wiretap Statute, G.L. c. 272, § 99C, et seq.-on behalf of Plaintiff and the Classes)**

104.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.  Plaintiff brings this Count V on behalf of himself and the Classes.

105.    In Massachusetts it is illegal to record a conversation or telephone call unless both parties consent to the recording.

106.    G.L. c. 272, § 99C provides "any person who willfully commits an interception, attempts to commit an interception, or procures any other to commit an interception or to attempt to commit an interception of any wire or oral communications shall be fined not more than ten thousand dollars, or imprisoned in the state prison for more than five years."

107.    For the purposes of the statute, the term "interception" means "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any interception devise by any person other than a person given prior authority by all parties to such communication…." G.L. c. 272, § 99(B)(4).

108.   An "interception device" means for the purposes of the statute, "any device or apparatus which is capable of transmitting, receiving, amplifying or recording a wire or oral communication…. G.L. c. 272, §99(B)(3).

109.   It is likewise illegal in Massachusetts to make use of the contents of an intercepted communication. G.L. c. 272, § 99(3)(a).

110.   The Supreme Judicial Court declared it was the intent of the legislature to "strictly" prohibit all secret audio recordings made without the knowledge or permission of all parties. *Commonwealth v. Hyde*, 434 Mass. 594, 595 (Mass. 2011).

111.   The "civil remedy" provisions of G.L. c. 272, § 99 provide the party subject to a secret recording without his or her knowledge or permission with a cause of action for statutory and punitive damages, an invasion of privacy claim, court costs, and attorney fees.

112.   The statute reads as follows:

> Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by this section shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest, and shall be entitled to recover from any such person: (1) actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation disbursements reasonably incurred.

> G.L. c. 272, § 99 Q.

113.   Defendant knew the telemarketing calls being made on its behalf were being recorded without the call recipients' knowledge or consent.

114.   At no time during the beginning of any of the calls made by Defendant and/or its agents to Plaintiff and Class members was it disclosed that the conversation was being recorded, nor were Plaintiff and Class members aware that the conversations were being recorded, and

therefore such recordings were made without Plaintiff's and Class members' knowledge or consent.

115.     Defendant committed interceptions of wire communications, including those of Plaintiff and Class members, in violation of G.L. c. 272, § 99 C.

116.     Defendant, while knowing the recordings were obtained illegally, stored and published those recordings, and therefore in several respects "used" and "disclosed" the recordings, in violation of G.L. c. 272, § 99 Q.

117.     Defendant's receipt and use of the illegal recordings constitute ratification of its agent's illegal conduct, to which Defendant may be held liable along with its agents, and in any event, Defendant used the illegal recordings, for which it may also be held liable.

118.     Plaintiff and Class members are entitled to statutory damages from Defendant for directly intercepting and recording Plaintiff's and Class members' conversations, without their consent, and separately, for use of each of those recordings, in the amount of $100.00 per day each, to an amount of not less than $1,000, commencing with the date the recordings were made and stored to the date they are destroyed.

## COUNT VI
**(Violation of M.G.L., c. 93A, § 2– on behalf of Plaintiff and the Classes)**

119.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein. Plaintiff brings this Count VI on behalf of himself and the Classes.

120.     At all relevant times, Defendant was engaged in commerce, for purposes of M.G.L., c. 93A.

121.     M.G.L, c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action for damages and injunctive relief.

122.    As alleged in greater detail herein, Defendant has violated M.G.L., c. 93A, § 2 by, among other things, making numerous unsolicited telephonic sales calls to Plaintiff and Class members and by violating the MTSA (including its underlying regulations), the TCPA, and the MWA in various ways (as alleged in detail herein).

123.    Defendant's violations of the MTSA, TCPA and the MWA constitute unfair and deceptive conduct in violation of M.G.L., c. 93A, § 2, by virtue of 940 C.M.R., § 3.16(3) (providing that an act or practice violates c. 93A, § 2 "if it fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection").

124.    Plaintiff and members of the Classes have been injured as a result of Defendant's use and/or employment of unfair and deceptive acts and practices in at least the following ways: harassment, invasion of privacy, and interference resulting from the calls, as well as costs incurred as a result of wear and tear on their phones, mobile phone battery usage, and use of cellular calling time.

125.    Defendant's conduct in violation of c. 93A, § 2 was willful and knowing.

126.    Defendant, as a result of its violations of c. 93A, § 2, is liable to Plaintiff and Class members for actual damages or statutory damages, whichever results in a greater recovery, and multiple damages and attorneys' fees.

127.    Plaintiff made a written demand for relief pursuant to c. 93A, § 9(3) on December 6, 2018. Defendant has failed to provide a reasonable offer of relief in response to Plaintiff's written demand.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class members and Subclass members, demands judgment against Defendant as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Classes and Subclass and appoint Plaintiff's counsel as counsel for the Class and Subclass;

B.   That the Court Award actual monetary damages arising from Defendant's violations of law or statutory damages for each violation, whichever is greater, and where applicable, attorneys' fees and costs;

C.   That the Court award compensatory, statutory and multiple damages as appropriate;

D.   That the Court enjoin Defendant from additional and continuing violations of the MTSA, the TCPA and the MWA; and

E.   That the Court award pre-judgment interest, costs and such further relief as the Court  may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims so triable.

Dated:   December 2nd, 2021

/s/ Richard B. Reiling_____
Richard B. Reiling, BBO #629203
BOTTONE | REILING
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: 617.412.4291
Email:  richard@bottonereiling.com

/s/ David Pastor_____
David Pastor, BBO # 391000
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone: 617.742.9700
Email:  dpastor@pastorlawoffice.com

*Counsel for Plaintiff and the Class*